# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER CALL NUMBER 404-784-9893 T-Mobile

Case No. 1:20MJ-180

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A. Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. 841(a)(1) | Distribution of a Controlled Substance |
| 21 U.S.C. 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:
See Affidavit in Support of Application for Search Warrant. To ensure technical compliance with 18 U.S.C. 3121-3127, the requested warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration. See 18 U.S.C. 3122(b), 3123(b).

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of 30 days (give exact ending date if more than 30 days: ____________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason M. O'Brien, Task Force Officer FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/12/20

*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

## AO 106 Attachment

See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation. *See* 18 U.S.C. §§ 3122(b), 3123(b).

I declare under penalty of perjury that the foregoing is true and correct.

February 12, 2020
DATE

*s/Ashley N. Brucato*
ASHLEY N. BRUCATO (0090989)
Assistant United States Attorney

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **404-784-9893 (TARGET TELEPHONE)** whose wireless service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered in St. Bellevue, WA.

2. Information about the location of the cellular telephone assigned call number **TARGET TELEPHONE** that is within the possession, custody, or control of T-Mobile US, Inc., including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Things to be Seized

### I. Information to be Disclosed by the Provider

All information about the location of the target cell phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the target cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile US, Inc. T-Mobile US, Inc. is required to disclose the Location Information to the government. In addition, T-Mobile US, Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile US, Inc. services, including by initiating a signal to determine the location of the target cell phone on T-Mobile US, Inc. network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance. In addition, the government may initiate a signal to determine the location of the target cell phone.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## I. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841 and 846 involving KENNY HARVEY and other identified and unidentified individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 404-784-9893 (T-Mobile US, Inc.) | CASE NO. <br> UNDER SEAL |
|---|---|

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Jason O'Brien, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **404-784-9893** (hereinafter "**TARGET TELEPHONE**"), whose service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered in St. Bellevue, WA. The targeted cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Task Force Officer with the Federal Bureau of Investigation (FBI), and have been since September 2011. I am also a Cincinnati Police Officer and have been since August

2002. I have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include the unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Your affiant has also participated in the execution of federal search warrants and federal arrest warrants in relation to these investigations. Additionally, your affiant has participated in the installation and monitoring of tracking devices for vehicles in order to determine the whereabouts of believed drug traffickers and their illicit merchandise. Your affiant has also been the affiant on multiple T-III Wiretap affidavits as well being involved with the administrative duties and monitoring responsibilities of Title III Wire intercepts, and analysis of pen registers related to narcotics and gang investigations. Your affiant is familiar with their methods of concealing the whereabouts of their illegal drugs, the methods they use to keep law enforcement officers from finding evidence of drug trafficking operations as well as the methods they use to prevent others unfamiliar with their criminal conduct from observing things indicative of drug trafficking. Your affiant is also familiar with the paranoia surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

4. Through my training and experience I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hard-line telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by Kenny HARVEY (hereinafter "HARVEY"), and other as-yet unknown individuals. I believe there is probable cause that the **TARGET TELEPHONE** is being used in furtherance of the aforementioned crimes. There is also probable cause to believe that the location information described in Attachment B of **TARGET TELEPHONE** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. Since 2017 the Cincinnati Police Department has been investigating a Drug Trafficking Organization (hereinafter DTO) led by Kenny HARVEY a/k/a "SK." Multiple confidential informants and confidential witnesses have reported that HARVEY is selling kilogram quantities of heroin, fentanyl, methamphetamine and marijuana. HARVEY also uses multiple members of his organization to sell narcotics on his behalf. Throughout the course of

the Cincinnati Police Department's investigation, law enforcement has conducted several seizures and/or arrests related to the HARVEY and HARVEY's DTO, which included the seizure of narcotics, the arrest of multiple individuals for possession of narcotics and/or trafficking drugs, and cash seizures.

9. In December of 2018 the Cincinnati FBI opened an investigation into the All State Violent Crime Organization, which was being led by Benwan EDWARDS and Marqui CONLEY in Middletown, Ohio. As a result of that investigation, on April 8, 2019 the Honorable Timothy S. Black, United States District Court Judge approved the interception of wire communications to and from a phone used by Benwan EDWARDS. Throughout the course of those interceptions investigators intercepted numerous conversations reference the sale of narcotics.

10. On April 17, 2019, investigators intercepted a call between EDWARDS and [redacted] is a close associate of HARVEY. During the call [redacted] put HARVEY on the phone. EDWARDS was interested in purchasing narcotics from HARVEY. HARVEY offered to sell EDWARDS heroin/fentanyl mixture, methamphetamine and marijuana. HARVEY and [redacted] instructed EDWARDS to meet them in Cincinnati, Ohio. Investigators were able to follow EDWARDS and his associate Marqui CONLEY to 1214 Drott Ave in Price Hill, Cincinnati, Ohio where they met with HARVEY and [redacted] As discussed below 1214 Drott is a known narcotics distribution location for HARVEY. EDWARDS and CONLEY met with HARVEY and BOYDEN for approximately 2 and a half hours. Based on the calls intercepted after the meeting investigators do not believe EDWARDS purchased any narcotics on April 17, 2019.

11. On May 2, 2019, EDWARDS and CONLEY were charged in a multi-count Federal Complaint for Conspiracy to Possess and Possession with Intent to Distribute a Controlled

Substance. On May 6, 2019, EDWARDS was arrested on those charges. During the interview and post Miranda, EDWARDS was reminded of the above described intercepted call and trip to Cincinnati. EDWARDS stated that he and CONLEY travelled to Cincinnati, Ohio in an attempt to meet a new source of supply. EDWARDS confirmed that he nor CONLEY purchased any narcotics because the prices were too high. EDWARDS was not asked specific questions related to HARVEY or [redacted] because investigators did not want EDWARDS to know that there was a current investigation targeting HARVEY. However, investigators believe based on the above described interception, the physical surveillance and statement by EDWARDS that EDWARDS met with HARVEY at 1214 Drott to discuss HARVEY as a potential new narcotics supplier for EDWARDS.

12. A Confidential Human Source, herein after CHS1, has been providing information to the FBI and CPD since May 2019. CHS1 is providing information for case consideration and has provided details which law enforcement officers have vetted as reliable, concerning drug trafficking offenses related to HARVEY's DTO. This information includes cell phone numbers, vehicles, narcotics storage locations, and the identification of HARVEY and members of the DTO. CHS1 stated that Kenny HARVEY is a large scale narcotics trafficker. CHS1 stated that he/she has routinely observed HARVEY in possession of large amounts of narcotics, including fentanyl, "Molly," ecstasy, and marijuana. CHS1 stated that HARVEY owns and/or maintains several residences in the Cincinnati area the he uses as "stash houses." CHS1 stated that he has observed HARVEY in possession of narcotics at these "stash houses."

13. CHS1 stated that HARVEY has 5-6 different phones, all of which are iPhones. CHS1 stated that HARVEY frequently uses Apple Facetime to set up the narcotics transactions. CHS1 stated that HARVEY uses Facetime to limit his exposure to law enforcement based on HARVEY's belief that Facetime is encrypted and law enforcement is unable to intercept these

communications. CHS1 stated that HARVEY often uses others to conduct the drug transactions on his behalf. CHS1 also stated that HARVEY will occasionally use Uber to drive him to conduct narcotics transactions.

14. On November 22, 2019, the Honorable Alan Triggs, Hamilton County Municipal Court Judge, signed a search warrant for 3363 Queen City Ave #11. 3363 Queen City Ave #11 is the residence Lachell JONES.[1] Prior to the execution of the warrant Jones was stopped exiting the residence. JONES was read her Miranda rights and she acknowledged that she understood her rights. JONES stated that there was a large amount of drugs in her residence. She stated that she was storing these drugs for "Fat Mike" and "Fat Boy." "Fat Boy" is a known nickname for Kenny HARVEY. JONES positively identified a photograph of HARVEY as the subject she knows as "Fat Boy." JONES stated that HARVEY pays her to store the drugs at her residence. Furthermore JONES stated that HARVEY pays her to meet his drug customers on his behalf. During the search of JONES' residence, law enforcement found approximately 1.4 kilograms of fentanyl mixture, 520 grams of methamphetamine, 436 grams of heroin, 321 grams of cocaine and two firearms.[2]

15. Since May 2019, CHS1 has made several controlled purchases of narcotics from HARVEY at the direction of investigators. Some of these controlled purchases were conducted by HARVEY himself while on other occasions HARVEY sent other subjects to sell the narcotics on his behalf. The last controlled purchase made by CHS1 occurred at the end of January 2020. All of these controlled purchases with CHS1 and Harvey were set up using Apple Facetime. Since May 2019 investigators have identified numerous different cell phone numbers

---

[1] JONES is a known member of the DTO. JONES was identified by investigators during multiple controlled narcotics purchases with CHS1 in which HARVEY arranged for JONES to meet CHS1 on HARVEY's behalf.
[2] The substances recovered in the search of JONES' home were tested at the Hamilton County Crime Laboratory.

being utilized by HARVEY. The majority of the cell phone numbers identified had an out of town area code.

16. In late January 2020, CHS1 stated that HARVEY provided CHS1 with a new number, 404-784-9893, herein after **TARGET TELEPHONE.** CHS1 stated that HARVEY has spoken to CHS1, using **TARGET TELEPHONE**, via Apple Facetime on numerous occasions reference narcotics.

17. On February 12, 2020 T-Mobile US, Inc. responded to an administrative subpoena reference **TARGET TELEPHONE.** T-Mobile US, Inc. provided that **TARGET TELEPHONE** was activated on January 30, 2020 and is a pre-paid account with no subscriber name or address. Investigators conducted toll analysis on the **TARGET TELEPHONE.** Toll analysis on the **TARGET TELEPHONE** shows a similar call pattern to several of the previously identified cell phones utilized by HARVEY.

18. Based on my training, experience, and conversations with other law enforcement officers/agents, "prepaid" accounts with no subscriber name and non-associated addresses, such as the aforementioned, are commonly used by narcotics traffickers to thwart investigative efforts of law enforcement from discovering the identity of the person utilizing the cellular telephone to conduct illegal narcotics transactions or other crimes.

19. Based on my training, experience, knowledge of this investigation, along with the aforementioned facts and reporting, I believe there is probable cause to show that the **TARGET TELEPHONE** is being used to commit federal narcotics offenses and the information requested will assist the FBI in identifying co-conspirators, stash locations, and additional cellular devices owned and operated by the target subjects.

20. Based on my training, experience, and discussions with other law enforcement officers/agents, activities observed during surveillance, and reliable CHS information, I

believe that HARVEY is utilizing the **TARGET TELEPHONE** in furtherance of facilitating illicit narcotics transactions with other as-yet-unidentified individuals, that those transactions are federal narcotics offenses, and that the information requested will assist the FBI in identifying co-conspirators and additional cellular devices owned and operated by the targeted subjects.

21. In my training and experience, I have learned that providers of cellular telephone services have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training and experience, I know that wireless phone companies can collect E-911 Phase II data about the location of a target cell phone, including by initiating a signal to determine the location of the target cell phone or with such other reference points as may be reasonably available.

23. Based on my training and experience, I know that wireless phone companies can also collect cell-site data about the target cell phone.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a (b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a (b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a (b)(2).

26. I further request that the Court direct the T-Mobile US, Inc. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile US, Inc.. I also request that the Court direct T-Mobile US, Inc. to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of

interference with T-Mobile US, Inc. services, including by initiating a signal to determine the location of the target cell phone on T-Mobile US, Inc. network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance. I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the target cell phone to determine the location of the target cell phone. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cell phone outside of daytime hours. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

Jason M. O'Brien
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on this 12 day of February, 2020.

HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to Be Searched**

1. The cellular telephone assigned call number **404-784-9893 (TARGET TELEPHONE)** whose wireless service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered in St. Bellevue, WA.

2. Information about the location of the cellular telephone assigned call number **TARGET TELEPHONE** that is within the possession, custody, or control of T-Mobile US, Inc., including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Things to be Seized

### I. Information to be Disclosed by the Provider

All information about the location of the target cell phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the target cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile US, Inc. T-Mobile US, Inc. is required to disclose the Location Information to the government. In addition, T-Mobile US, Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile US, Inc. services, including by initiating a signal to determine the location of the target cell phone on T-Mobile US, Inc. network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance. In addition, the government may initiate a signal to determine the location of the target cell phone.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## I. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841 and 846 involving KENNY HARVEY and other identified and unidentified individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.